OPINION
{¶ 1} Defendant-appellant Brady C. Inman, III, appeals the May 17, 2004 Judgment Entry entered by the Delaware County Court of Common Pleas, which approved and adopted the Magistrate's December 4, 2003 Decision, issuing a civil stalking protection order against him, and in favor of plaintiff-appellee Tina D. Baker.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 28, 2003, appellee filed a petition for a civil stalking protection order pursuant to R.C. 2903.214. On the same day, the trial court issued an ex parte order and scheduled a hearing on the petition. The following evidence was adduced at the hearing.
 {¶ 3} Appellee testified she and appellant had a relationship for approximately five years. From July, 1999, until the end of the relationship in June, 2003, appellant lived with appellee and her son from a previous marriage at 279 Freedom Lane in Delaware, Ohio. The parties separated in October or November, 2002, after appellee discovered tapes of her phone calls, which dated back to May, 2002. They reconciled in February, 2003, but separated in June, 2003. Appellee stated she had no telephone contact with appellant in June, July, or August, 2003, except with regard to a storage unit the parties shared.
 {¶ 4} Appellee recalled she had been away for the long Labor Day weekend proceeding her fortieth birthday, which was on September 2, 2003. When she retrieved her mail on Tuesday, she found a package in the back of her mailbox which had not arrived via the postal system. The package contained a birthday card and a gift of jewelry from appellant. The incident was very upsetting to appellee because she did not like the fact appellant had been at her property in the middle of the night. Appellee packaged the items and sent them to appellant at his mother's address via certified mail. Included with the jewelry, appellee wrote a note to appellant which read, "I do not appreciate you being at my house in the middle of the night; I do not want a birthday present from you, the relationship is over; we are not getting back together, leave me alone." Tr. at 18. Although appellee did not talk to appellant on the telephone, her caller ID indicated several calls from the Clinton Township Police Department, where appellant worked. The parties separated in June, 2003, however, as of November 14, 2003, appellant continued to use appellee's address as his place of residence.
 {¶ 5} Also during the month of September, 2003 appellee started to get comments at work regarding her failure to return telephone calls. At that point, appellee realized she was not receiving her voicemail. Her employer advised her there was a breach of her voicemail security. By October, 2003 appellee was receiving frequent hang-up phone calls on her cell phone. The cell phone would indicate the incoming was "unavailable," which meant the incoming number was being blocked. When appellee obtained the cell phone records from her telephone company, she learned these hang-up calls were coming from appellant's telephone number. The cell phone records established the dates of these calls as 10/2/03; 10/4/03; 10/7/03; 10/9/03; 10/12/03 (two calls); 10/14/03 (three calls); and 10/15/03 (two calls). After October 10, 2003, appellee changed her cell phone number. During the week of October 21, 2003, appellee had a short conversation with appellant, during which she repeatedly told him to leave her alone and to stop calling her. On October 24, 2003, after appellee received a hang-up phone call from a nearby payphone, she changed her home telephone number. Prior to that, she had received several hang-up phone calls from local payphones to her home phone number. These payphones were located in close proximity to appellee's residence.
 {¶ 6} Sometime after the breakup, appellee noticed a piece of equipment outside her home near the exterior phone juncture box. Appellee subsequently learned the equipment was a phone splitter, used for installing additional phone lines or for plugging in a recording device. Appellee testified she is fearful of appellant because he is a police officer and carries a weapon, and appeared to be obsessed with the fact the parties were no longer together, and that appellee was seeing another person.
 {¶ 7} On cross-examination, appellee testified her employer informed her they had received an anonymous phone call indicating appellant was getting into her voicemail at work. Appellee stated her job performance is based upon the number of loans she underwrites, and noted her work production had dropped due to the stress of trying to get the temporary protection order, due to her employer not wanting her to work late, and due to having to take time off for the proceedings. Appellee acknowledged she was not seeing a psychiatrist, psychologist, or counselor, and was not currently taking any medication for stress or anxiety. Appellee noted she takes a heart medication for a condition called mitral valve prolapse. Her doctor put her on the medication in early October due to a worsening of the condition caused by the stress of the situation. Appellee testified she had changed her work routine and often took different routes home.
 {¶ 8} Appellant testified on his own behalf. He testified he and appellee began a serious romantic involvement in mid to late 1997. After losing his job at the Delaware County Bank in January, 1997, appellant became involved in a self-employment situation, which resulted in his filing bankruptcy. In March, 1998, appellant completed his studies at the Police Officer's Training Academy. Thereafter, appellant became employed with the Shawnee Hill Police Department. In November, 2001, appellant began working at the Clinton Township Police Department. Appellant had also applied to the Delaware County Sheriff's Office. When the Delaware Sheriff's Office failed to offer him a position, after the detective who interviewed him advised him he would be receiving an offer, appellant learned his former employer had made some derogatory remarks about him. Appellant subsequently filed a suit against his former employer. As part of the litigation, appellant taped telephone conversations he had with the Delaware County Sheriff's Office and with his former employer. Conversations between appellee and her friends were also recorded. Appellant claimed such was inadvertent. During this time period, the parties separated, but reconciled in late May, 2001. The couple separated a second time in October or November, 2002, but reconciled in February, 2003.
 {¶ 9} After the second reconciliation, appellant gave appellee $11,000, which was part of the settlement he received from his former employer, in order for appellee to resolve financial difficulties she was having. According to appellant, appellee promised to repay the money as soon as possible. Appellant contacted appellee after their breakup regarding some of his personal belongings which he had left at the appellee's residence as well as appellee's plan to repay him the money. Appellant acknowledged he called appellee's cell phone, but noted the calls went directly to voicemail and he did not leave a message. Appellant stated he never hung-up on appellee if she answered the telephone. Appellant testified between June, 2003, and October, 2003, he had only three contacts with appellee. With respect to the phone splitter, appellant recalled appellee's son found it in the backyard and brought it into the house to show to appellant and appellee. Appellant stated this occurred sometime between February, 2003, and the beginning of June, 2003.
 {¶ 10} The parties filed written closing arguments. After hearing all the evidence, the magistrate issued a civil stalking protection order against appellant. Appellant filed timely objections thereto. Via Judgment Entry filed May 17, 2004, the trial court overruled appellant's objections, and affirmed and adopted the magistrate's decision.
 {¶ 11} It is from this judgment entry appellant appeals raising the following assignments of error:
 {¶ 12} "I. Whether the trial court erred in adopting the magistrate's order.
 {¶ 13} "II. Whether the trial court erred in issuing the civil protection order.
 {¶ 14} "III. Whether appellee met her burden of proof on all elements necessary to the issuance of a civil protection order pursuant to Ohio Revised Code 2903.211."
 I, II, III {¶ 15} Because appellant's assignments of error are interrelated, we shall address said assignments together. Appellant, in his three assignments of error, argues the trial court's adoption of the magistrate's decision and the trial court's subsequent issuing of the civil protection order were erroneous as such was against the manifest weight of the evidence.
 {¶ 16} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 17} R.C. 2903.214 governs the issuance of civil protection orders. The statute states, in relevant part:
 {¶ 18} "(C) A person may seek relief under this section * * * by filing a petition with the court. The petition shall contain or state both of the following:
 {¶ 19} "(1) An allegation that the respondent engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order, * * *"
 {¶ 20} R.C. section 2903.211 defines "menacing by stalking" as follows:
 {¶ 21} "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
* * *
 {¶ 22} "(2) "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."
 {¶ 23} In its May 17, 2004 Judgment Entry, the trial court found appellee's testimony demonstrated she had increased stress over the situation which reduced her production at work and, consequently, affected her income. The trial court further found appellee's testimony established she had to increase her medication due to the aggravation of a preexisting condition as a result of the stress of the situation with appellant. The trial court concluded the evidence taken in its entirety supported a finding appellant "knowingly engaged in a pattern of conduct which would cause mental distress" to appellee. (Emphasis added). We disagree.
 {¶ 24} Upon review of all the evidence, we find appellee failed to establish she suffered "some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." While appellee felt compelled to change her cell phone and home telephone numbers, and although she felt "stress," she expressed no fears about leaving her home in pursuit of her daily life. The fear appellee expressed about appellant centered around the fact that as a police officer, appellant carried a weapon. Appellee acknowledged appellant had never physically or verbally threatened her. The mere fact appellant is a police officer does not, in an of itself, support a finding appellant knowingly engaged in a pattern of conduct to cause appellee to believe he would cause her harm, despite her subjective fear. While we do not disagree appellant became slightly obsessed about the breakup with appellee, we simply cannot justify the issuance of a civil protection order based primarily upon repeated hang-up telephone calls in the absence they resulted in mental distress as defined in the statute. We find the trial court's determination appellant's pattern of conduct "would cause mental distress to [appellee]" is against the manifest weight of the evidence.
 {¶ 25} Appellant's assignments of error are sustained.
 {¶ 26} The judgment of the Delaware County Court of Common Pleas is reversed.
Hoffman, J., Gwin, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is reversed. Costs assessed equally.